# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1760

_____

Silvia Sepulveda-Rodriguez

*Plaintiff - Appellee*

v.

MetLife Group, Inc., a New York Corporation

*Defendant*

Metropolitan Life Insurance Company, a New York Corporation

*Defendant - Appellant*

Ford Motor Company, a Delaware Corporation

*Defendant*

_____

No. 18-1761

_____

Silvia Sepulveda-Rodriguez

*Plaintiff - Appellee*

v.

MetLife Group, Inc., a New York Corporation; Metropolitan Life Insurance
Company, a New York Corporation

*Defendant*s

Ford Motor Company, a Delaware Corporation

*Defendant - Appellant*

———————

Appeals from United States District Court
for the District of Nebraska - Omaha

———————

Submitted: May 14, 2019
Filed: August 23, 2019

———————

Before COLLOTON, BEAM, and SHEPHERD, Circuit Judges.

———————

BEAM, Circuit Judge.

Metropolitan Life Insurance Company (MetLife) and Ford Motor Company appeal the district court's award of benefits, costs and attorney fees in this case brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. (ERISA). Silvia Sepulveda-Rodriguez's husband, Jose, the insured and an employee of Ford, died, and while MetLife[1] paid Silvia the basic life insurance benefit, it denied payment of an optional life insurance benefit (OLI). We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I.    BACKGROUND

Jose was employed by Ford as a customer service representative from October 2013 to the time of his death in 2015. At the time his employment commenced, he

———————

[1]Ford, as Jose's employer, is the plan administrator, while MetLife is the insurer and claims administrator.

-2-

opted into Ford's basic life insurance plan (which amounted to one and a half times a year's salary, in this case approximately $55,000). This basic life component was provided as a benefit at no cost to the employee, regardless of medical history. Ford also offered employees the option to apply for OLI, which increased their life insurance coverage, at their own cost, once the employee submitted proof that he was in good health and insurable. The Summary Plan Description (SPD) described the enrollment requirements for OLI as follows: "If you elect coverage or increase your coverage when first eligible, during annual enrollment or due to a Qualified Event, you must provide proof of your good health before the election or increase will be effective." Thus, the SPD clearly states that proof of good health is required before the OLI election is effective. Jose signed up for this OLI benefit which added an additional approximately $92,000 to the basic salary benefit. At the time of enrollment in 2013, Jose completed an online questionnaire[2] in which he answered "no" to all of the preliminary medical questions asked of him, including the question of whether he had been "diagnosed" or "treated" for high blood pressure. Because Jose passed this OLI initial threshold without any medical flags, Ford did not further underwrite the policy and ostensibly enrolled him in the program. Silvia and Jose believed that he was successfully enrolled in the OLI program, as Ford withheld OLI premiums from Jose's check and sent them to MetLife.

---

[2]The record indicates, and the district court lays out in detail, the fact that several representatives from MetLife originally could not find documentation regarding whether Jose was asked or had answered these initial online questions. Indeed, the district court actually made its own factual finding that the "cryptic" documents eventually unearthed by MetLife purportedly showing that Jose answered "no" to all of the medical questions asked did not establish the proposition that Jose answered "no" to each of the questions. However, the record also indicates that a representative from Xerox HR Solutions (Ford's designated human resources vendor) ultimately sent MetLife forms that the Xerox representative indicated were Jose's "no" answers to all of the online questions asked of him at the time of enrollment.

In contrast to his "no" answer to the online question regarding high blood pressure diagnosis and treatment, after Jose's death, medical records obtained by MetLife indicate that from 2004 to 2009, Jose was diagnosed, treated and given medical advice for high blood pressure, also known as hypertension. In 2004, Jose was treated in the emergency room for chest pain and arm numbness; was given an echocardiogram and stress test; and was prescribed high blood pressure medicine. A year or so later, Jose returned to the doctor, reported that he had stopped taking the blood pressure medication, and complained that his heart was "racing." Several times when Jose saw his physician in 2005, 2006, and 2007, his medical records indicate the diagnosis of hypertension or a refill of the blood pressure medication. In 2008, Jose's physician switched Jose to a different kind of blood pressure medication because Jose was having difficulty complying with his previous blood pressure medication regimen. The last medical notation in the administrative record showing a diagnosis of hypertension or high blood pressure is from December 31, 2009, when Jose was treated for acute bronchitis, but the examiner noted his blood pressure was high that day, that he had "HTN," presumably shorthand for hypertension, was "out of meds," and best we can tell from the dubious handwriting of the physician, that Jose requested a refill of the hypertension medication.

Jose passed away on June 4, 2015, of "hypertensive and atherosclerotic heart disease." Silvia filed a claim for life insurance benefits in September 2015. While the claim for basic life benefits was paid (in the amount of $55,616), MetLife began looking into Jose's original application for OLI benefits, and asked for prior medical records. As noted, Jose's records indicated that he was previously treated for hypertension and cardiac issues. With regard to the online questionnaire, while it took some time to discover whether Jose took the online initial assessment tool, and if he did, what his answers to the online questionnaire revealed, MetLife ultimately was told by Ford's HR representatives that Jose had filled out the questionnaire and answered "no" to each health inquiry, including whether he had been treated for high blood pressure.

On February 9, 2016, Silvia alleges she was informed by a MetLife representative that the OLI claim *was* going to be paid, but that payment was pending "some sort of approval from Ford Credit." Less than a week later, on February 15, 2016, Silvia was informed via a letter that the claim would be denied. MetLife asserted that the reason for the denial was that Jose "should have answered yes to one or more of the medical questions." If he had, further inquiry would have taken place. Accordingly, the letter stated that OLI coverage did not go into effect under the terms of the plan. Silvia appealed in April 2016, and asked MetLife for documents, including the SPD. In May 2016, the appeal was denied, and while MetLife provided Silvia the claim file, the SPD was not provided to Silvia. Silvia retained counsel, and in June 2016 her counsel further requested documents, including the SPD. In August, Silvia's counsel repeated the request for the SPD from MetLife. In response, MetLife revealed for the first time that Silvia would need to obtain the SPD from Ford. Silvia's counsel then requested the SPD from Ford on September 1, 2016, and Ford received the request on September 7. Ford eventually mailed Silvia a copy of the SPD in late October 2016. Ford asserts that the SPD was always available online, but Silvia asserts she had no knowledge of this, nor knowledge of how to access Jose's online account.

Silvia filed the present ERISA action November 15, 2016. The administrative record was filed with the district court, and both parties moved for summary judgment. The district court granted judgment in favor of Silvia, finding that she was entitled to statutory penalties in the amount of $2,090 for Ford's delay in providing the SPD. Further it found the denial of OLI coverage was an abuse of MetLife's discretion because it found the policy contained vague and inconsistent language. As previously stated, the district court made specific findings about the adequacy of the proof regarding the online assessment form that Jose purportedly filled out at the time of enrollment, noting that the documents were inadequate to show that Jose misrepresented his prior medical history. Thus, the court awarded benefits in the amount of $92,694. Alternatively, the court found that benefits would have been

appropriately awarded under an equitable estoppel theory. Finally, the district court awarded Silvia attorney fees in the amount of $27,045 and costs in the amount of $420. Ford and MetLife appeal all aspects of the district court's order.

## II.    DISCUSSION

Because of the plan language giving Ford and MetLife the discretionary authority to construe the terms of the plan, the district court was required to apply an abuse of discretion standard of review to the decisions made by Ford and MetLife in this case. Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh, 863 F.3d 1036, 1039 (8th Cir. 2017) (standard of review). When reviewed for an abuse of discretion, an administrator's decision is upheld if it is reasonable, i.e., supported by substantial evidence. Silva v. Metro. Life Ins. Co., 762 F.3d 711, 717 (8th Cir. 2014). To determine whether a plan administrator's interpretation of policy terms is reasonable, we examine whether the interpretation: (1) is consistent with the goals of the plan; (2) renders any language of the plan meaningless or internally inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4) is consistent with past decisions; and (5) is contrary to the clear language of the plan. Donaldson, 863 F.3d at 1039. Substantial evidence is more than a scintilla, but less than a preponderance, of evidence. Johnson v. United of Omaha Life Ins. Co., 775 F.3d 983, 989 (8th Cir. 2014). This is a restrictive standard of review of the administrative decision, and does not permit a court to "weigh the evidence anew" and render its own decision. Waldoch v. Medtronic, Inc., 757 F.3d 822, 834 (8th Cir. 2014) (quotation omitted). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." Johnson, 775 F.3d at 989 (quoting McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004)). Because MetLife is both the insurer and the claims administrator, we take into account the possible conflict of interest created by those dual roles and give the possibility some weight when determining whether MetLife has abused its discretion. Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038-39 (8th Cir. 2010). We

review the district court's grant of summary judgment in this ERISA case de novo. Id. at 1038.

## A.     Merits of the Denial of Benefits

MetLife asserts that the district court merely gave lip service to the above standard of review, and in reality, weighed the evidence and came to its own conclusions, rather than affording it, as the claims administrator, proper deference. MetLife admits that while it did take some digging to clarify whether Jose had filled out an online health questionnaire when he first enrolled in OLI, at the end of the day, Ford's HR representative was able to produce evidence that Jose did fill out such a form, and that he provided a false answer about his high blood pressure history. MetLife contends that it was entitled to rely upon Ford's HR representative that the documents existed as represented. Accordingly, MetLife argues there is substantial evidence to support its decision to deny OLI benefits to Silvia.

Silvia argues the district court correctly determined there was a lack of substantial evidence to support the denial of OLI benefits due to inconsistencies in the administrative record about when, if, and how Jose filled out the online form when he first signed up. Additionally, she believes that a medical examination that Jose submitted to after he was employed by Ford led the couple to believe Jose's OLI coverage was in effect. Finally, she asserts that the district court correctly determined that the language of the policy was ambiguous regarding when health information and proof of insurability needed to be provided for OLI benefits, and that by accepting Jose's premiums for the entirety of his work life at Ford (and not offering to return those premiums after denying the claim), the court was correct in finding that MetLife should be equitably estopped from failing to pay the OLI coverage.

Under the deferential standard of review, we find that the district court erred in finding there was not substantial evidence to support MetLife's denial of OLI

benefits. There is substantial evidence in the record to support MetLife's assertion that Jose answered an online questionnaire averring that he had *not* been treated for high blood pressure, when in fact he had. If Jose had answered "yes" to the high blood pressure question, there is substantial evidence in the record to support the assertion that his access to OLI benefits would not have been automatically granted. Instead, the claim would have been underwritten and Jose may, or may not have, been cleared for acceptance into the OLI benefit program. The information in the OLI policy and the SPD support this conclusion. The SPD states that Jose would be "answering five questions about [his] health status." Then, "[d]epending on your answers to these questions, you may also need to complete a more detailed questionnaire (i.e., a Statement of Health form)." Because Jose answered "no" to all of the initial questions, the second portion of the health inquiry was not activated.

The district court went beyond its mandate of deciding whether substantial evidence supported MetLife's decision. Indeed, had the district court been the trier of fact in the first instance, it is apparent the court would have rejected the documents sent by the Xerox HR representatives as unreliable. But MetLife credited those documents, and likely did so because the multiple communications sent back and forth between these various representatives indicate that new enrollees in Ford's OLI plan are routinely and in the normal course required to answer such questions in order to qualify for OLI. MetLife's representative Edward Sullivan repeatedly asked the Xerox employees to continue to search for the information because it would have been highly unusual for Jose to be enrolled in OLI without completing the online form. When the online forms with Jose's answers were ultimately found, MetLife was entitled to rely upon the Xerox HR representative's assertions that this was, indeed, the online form that was routinely filled out by employees wishing to obtain OLI benefits. MetLife was further entitled to rely upon the assertions and indications that Jose answered "no" to each screening question asked of him.

We disagree with the premise that Silvia is entitled to Jose's OLI benefits because even if Jose had answered "yes" to the high blood pressure screening question, he may (or may not) have ultimately been allowed to obtain OLI coverage after the underwriting had occurred. Silvia points to a statement from MetLife senior reviewer Kay Fleming that the underwriters "would not request additional documentation unless [Jose] had hypertension and hyperlipedia and was being treated by a cardiologist and being medicated." Nonetheless, it was Ford's policy to have the employees complete the initial online questionnaire. When all basic health screening questions were answered in the negative, no further action was taken and the employee was enrolled into the OLI program. If Jose had truthfully answered the hypertension question, there is substantial evidence in the record to support MetLife's assertion that further underwriting and medical examinations would have taken place. Silvia points to a medical examination Jose underwent in March 2015 for a program called "CareAllies." She claims that this examination shows that MetLife was aware of Jose's overall health, and that he would have ultimately been admitted to the OLI program had the underwriting taken place. However, at that point, Jose was already enrolled in the OLI program based upon his false answer about past hypertension treatment in the online screening questionnaire. We agree with MetLife's assertion that Jose's health in the years after his enrollment for OLI coverage was irrelevant to his failure to satisfy the plan's initial prerequisite to coverage being issued–truthful "no" answers to the online screening questions. Once that horse was out of the barn by virtue of Jose's "no" answers, the premiums were deducted and Jose was automatically admitted into the OLI program.

This case is distinguishable from our opinion in Silva, heavily relied upon by the district court. In Silva, the deceased insured's beneficiary was also denied an OLI benefit after her husband had ostensibly signed up for the extra coverage and was charged premiums. We reversed the district court's decision granting summary judgment to the insurance company in its denial of benefits. Silva, 762 F.3d at 719. In Silva, however, the plan apparently did not have an SPD to explain basic concepts,

did not mention a statement of health form, and most importantly, it was unclear whether the insured at issue was asked about his health status or health history at the time of enrollment. Id. at 715, 721. Because there were questions of fact regarding whether the insurance company abused its discretion in denying benefits or should be estopped from denying benefits, we reversed and remanded for further proceedings. Id. at 719, 724. In the instant case there are no such questions of fact. MetLife was informed by Ford's HR representative that Jose took an online questionnaire and falsely answered "no" to a question about his past history and treatment of high blood pressure. Due to the false answer, Jose was automatically enrolled in OLI benefits, and premiums were deducted from his paycheck. No further inquiry was made by either party until Jose's death from complications due to heart problems, including hypertension. There is substantial evidence in the record to support MetLife's reliance upon the plan administrator's representations that Jose would not have been automatically enrolled in the OLI program if he had truthfully answered the high blood pressure question in the screening questionnaire. Thus, we reverse the district court's order awarding OLI benefits.

Finally, to the extent Silvia argues, and the district court found, that the OLI benefits could also have been awarded on an equitable estoppel theory, we disagree. Silvia argues that MetLife and Ford breached their fiduciary duties and should be equitably estopped from denying that Jose was enrolled in the program when premiums for the program were deducted from his paycheck and Jose and Silvia were led to believe that he was successfully enrolled in OLI. First, Silvia had an adequate legal remedy (albeit an unsuccessful one), for her claim based upon the denial of, and asking for the award of, OLI benefits, and therefore an equitable remedy requesting the same relief is not available. See id. at 727 (finding that equitable claims that are exactly duplicative of the asserted legal claims are improper when "one claim alone will provide the plaintiff with 'adequate relief'"). We have found there was substantial evidence to support the denial of benefits based upon Jose's erroneous answer on the initial questionnaire and thus Silvia has no legal remedy. A duplicative

-10-

equitable estoppel remedy to obtain OLI benefits is also not available. Id. Accordingly, we reverse the district court's order to the extent it purports to grant OLI benefits to Silvia based upon equitable estoppel.

### B.     Failure to Timely Provide the SPD

Silvia's remaining claim for relief is for statutory benefits based upon the delay from the time she requested the SPD from Ford until the time she received it. Under 29 U.S.C. § 1024(b)(4), a plan administrator must furnish to participants and beneficiaries an SPD or other instruments under which the plan is established or operated to participants and beneficiaries upon written request. "[T]he [SPD]'s objective is to provide 'clear, simple communication' that states the terms and conditions of the Plan." Silva, 762 F.3d at 721 (quoting CIGNA Corp. v. Amara, 563 U.S. 421, 437 (2011)). The statute requires that the SPD be written such that the average plan participant can understand it, and it must set forth anything that may result in disqualification, ineligibility, or denial or loss of benefits. Id.; see 29 U.S.C. § 1022(b). The SPD must be "furnished" to the plan participants such that they are likely to actually get it. Silva, 762 F.3d at 721. The plan can be distributed electronically, but the administrator must take measures to ensure that the electronic system "[r]esults in actual receipt of transmitted information (e.g., using return-receipt or notice of undelivered electronic mail features, conducting periodic reviews or surveys to confirm receipt of the transmitted information)." 29 C.F.R. § 2520.104b–1(c)(1)(i)(A). Thirty days after receipt of the SPD request, plan administrators are subject to penalties of up to $110 per day for noncompliance. 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c–3. These penalties are designed to provide plan administrators with an incentive to comply with ERISA's disclosure requirements and to punish noncompliance. Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006). Section 1132(c)(1)(A) provides that an ERISA plan administrator "may in the court's discretion be personally liable" for failure to comply with the statute. We review the decision to grant or deny statutory damages for an

-11-

abuse of discretion.  Starr, 461 F.3d at 1040.  Although a defendant's good faith and the absence of harm are relevant, such factors do not preclude the imposition of the § 1132(c)(1)(A) penalty.  Id.

The district court awarded Silvia $2,090, because Silvia did not receive the SPD until October 28, 2016, nineteen days after the penalties began to run.  Ford contends that she could have gotten it online if she had known her deceased husband's password and further, that she suffered no prejudice, but we find no abuse of discretion in the district court's award of statutory penalties on this claim.  See Brown v. Aventis Pharms., Inc., 341 F.3d 822, 825-26 (8th Cir. 2003) (affirming the award of statutory penalties for failure to provide plan documents in a timely manner).

### C.    Attorney Fees, Costs, and Other Remedies

Because we are reversing the district court's award on Silvia's claim for OLI benefits, we reverse and remand to the district court for further consideration of the fee award in light of the results Silvia obtained against Ford.  See Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002) (en banc).  Also, because Silvia was denied benefits on the basis that Jose's OLI was never properly obtained, the district court may consider whether it is appropriate to award the equitable remedy of a return of the OLI premiums paid by Jose during his employment with Ford.[3]

### III.   CONCLUSION

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

––––––––––––––––––––––––––

[3]Counsel indicated at oral argument that in similar cases, premiums generally are returned once all of the appeals are exhausted.