# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1855

_____

Karen Roebuck

*Plaintiff - Appellant*

v.

USAble Life

*Defendant - Appellee*

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross Blue
Shield

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 22, 2020
Filed: April 1, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Karen Roebuck appeals the district court's[1] order holding USAble Life did not abuse its discretion in denying her claim for disability benefits. We affirm.

## I. Background

Roebuck incurred neck, back, shoulder, and wrist injuries as the result of a non-work-related car accident. She continued to work as a registered nurse for Arkansas Blue Cross Blue Shield for two years after the accident. Soon after she stopped working, Roebuck applied for disability benefits under her employer's group long term disability policy (the "Policy") with USAble Life. USAble Life conditionally approved Roebuck's claim for benefits pending further medical review.

The Policy contained a discretionary clause giving USAble Life control over a claimant's eligibility for benefits. The Policy was issued on January 1, 2011, and the Policy listed a single renewal date of January 1, 2012. There is no language in the Policy addressing if or when the contract renews after January 2012.

Between January 2015 and November 2016, multiple physicians treated Roebuck for ailments related to her neck and back pain. Dr. Kenneth Rosenzweig began treating Roebuck for spinal issues. Around the time she stopped working, Roebuck underwent breast reduction surgery to help with her back pain.

In June 2016, Roebuck filed her claim for disability benefits, alleging back, neck, wrist, and shoulder pain. Dr. Charles Himmler signed the attending physician statement in support of her claim for benefits. Dr. Himmler diagnosed Roebuck with back, neck, shoulder, and wrist injuries and recommended she limit herself to short periods of physical activity.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

USAble Life's medical consultant, Amy Smith ("Nurse Smith"), evaluated Roebuck's medical record and found inconsistencies between the health providers' opinions. Specifically, Nurse Smith noted Roebuck had "abnormal diagnostic findings" that were "inconsistent among providers," and Roebuck had "received numerous treatments without improvement." Nurse Smith also emphasized one of Roebuck's medical records indicated she was "malingering" regarding her knee pain. Even so, USAble Life initially approved Roebuck's claim for benefits pending a functional capacity evaluation ("FCE").

In November 2016, an independent physical therapist conducted the FCE. The physical therapist concluded Roebuck could perform work with a sedentary physical demand level. The FCE also stated Roebuck could work eight hours per day for forty hours per week. Based on the FCE's findings, USAble Life denied Roebuck's claim for disability benefits.

Roebuck appealed the denial of her claim and submitted additional medical records describing the deterioration of her condition since the FCE. Dr. Seana Daly, one of Roebuck's new treating physicians, signed a statement declaring Roebuck disabled due to osteoarthritis and coronary artery disease diagnoses. Dr. Timothy Putty, a neurologist, diagnosed Roebuck with cervical radiculopathy.

USAble Life submitted Roebuck's appeal to nurse Stephanie Benwell ("Nurse Benwell") for review. Nurse Benwell opined there was inconsistent and insufficient evidence to disrupt the FCE's findings. On December 5, 2017, USAble Life denied Roebuck's appeal.

Roebuck sued USAble Life alleging USAble Life wrongfully denied her claim for disability benefits. Applying an abuse of discretion standard of review, the district court determined that USAble Life's denial of Roebuck's claim was reasonable. The district court granted USAble Life judgment on the administrative record and dismissed Roebuck's complaint with prejudice.

## II.  Discussion

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Roebuck as the nonmoving party and drawing all reasonable inferences in her favor.  *Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 319 (8th Cir. 2018).

The parties dispute what standard of review applies in evaluating USAble Life's decision to deny Roebuck's claim.  Subsections A and B of this section address the standard of review, and subsection C evaluates USAble Life's denial of Roebuck's claim.

## A.  Applicability of Rule 101

The Supreme Court has directed that "a denial of benefits challenged under [the ERISA statute] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  However, when insurance contracts contain valid discretionary clauses, reviewing courts generally employ an abuse of discretion standard of review.  *Boyd*, 879 F.3d at 319; *Butts v. Cont'l Cas. Co.*, 357 F.3d 835, 838 (8th Cir. 2004).

Roebuck argues we cannot employ an abuse of discretion standard in reviewing the denial of her claim because an Arkansas regulation ("Rule 101") prohibits the inclusion of discretionary clauses in insurance contracts.  Ark. Code R. § 054.00.101-4.

-4-

Rule 101 states:

> No policy, contract, certificate or agreement offered or issued in this State providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

Ark. Code R. § 054.00.101-4.

The purpose of Rule 101 is "to prohibit conflicts of interest which may arise when an insurer responsible for providing disability income benefits has discretionary authority to decide what benefits are due." Ark. Code R. § 054.00.101-2. By invalidating discretionary clauses, Rule 101 effectively requires reviewing courts to adjudicate ERISA appeals using a less deferential de novo standard of review for "all disability income policies . . . issued or renewed on and after March 1, 2013." Ark. Code R. § 054.00.101-7.

On its face, the Policy was issued on January 1, 2011, and the Policy lists a single renewal date of January 1, 2012. No language in the Policy addresses if or when the contract renews after January 2012. Roebuck argues the anniversary date mentioned in the Policy effectively serves as a renewal date because of a passing mention of a "first renewal" date in the Policy. We disagree.

We find no precedent from the Supreme Court of Arkansas or any federal appellate court substantively addressing whether an anniversary date should be construed as a renewal date. The few district courts to address the issue have strictly interpreted the terms of the insurance contract and generally declined to find that an anniversary date constitutes a policy renewal absent explicit contract terms stating so.

In *Owens v. Liberty Life Assurance Co. of Boston,* 184 F. Supp. 3d 580, 584 (W.D. Ky. 2016), the district court directly addressed anniversary dates and policy

renewal in the context of Arkansas Rule 101. *Owens* found Rule 101 did not apply to an insurance policy where there was no "contractual provision specifying that the anniversary date constitutes a renewal of the Policy." *Id*. at 585. Similar to this case, the *Owens* policy contained a discretionary clause, and the policy was issued in July of 2012 and became effective on January 1, 2013—just a few months before Rule 101's March 1, 2013, effective date. *Id.* at 584. The policy in *Owens* described anniversary dates beginning in January 2014, but the district court declined to find the anniversary dates constituted renewal of the insurance policy. *Id*. at 585. [2] The district court stated that the policy "lack[ed] any reference to a renewal date at all, or that renewal of [the insurance policy was] necessary to keep it in force." *Id*. Citing *Owens*, the Western District of Arkansas held "the anniversary date of a policy is not a renewal within the meaning of Rule 101." *Price v. Tyson Long-Term Disability Plan*, No. 5:16-CV-05075, 2017 WL 3567531, at *3 (W.D. Ark. Aug. 17, 2017).

We find the analyses in *Owens* and *Price* persuasive, and we rely on the Policy's plain terms to determine the contract's renewal timeline. Based on its plain terms, the Policy has not automatically renewed after January 2012, and there is no other evidence of a renewal after the effective date of Rule 101. Thus, Rule 101 does not apply to the Policy's discretionary clause. One reference to "first renewal" in the Policy does not necessitate subsequent renewals on the Policy's anniversary date. Therefore, the Policy's discretionary clause is valid, and Rule 101 does not preempt it.[3]

---

[2]*See also Rogers v. Reliance Standard Life Ins. Co.*, No. 14 C 4029, 2015 WL 2148406, at *7 (N.D. Ill. May 6, 2015) (applying Texas law and stating an insurance policy does not renew annually simply because the policy mentions an anniversary date).

[3]During argument, Roebuck directed us to authority addressing the minimum requirements of valid insurance policies under Arkansas law. Ark. Code R. §§ 054.00.18-1 to 18-10*;* Ark. Code R. §§ 054.00.52-1 to 52-17. For the first time, Roebuck argued the Policy is non-compliant with Arkansas law requiring policies to include renewal date and duration terms. Because this argument was not brought

## B. Other Arguments for a Less Deferential Review

Roebuck separately argues her appeal should receive de novo review, rather than review for abuse of discretion, because USAble Life has a conflict of interest as the claim's insurer. Specifically, she notes the insurer benefits from denying the claim. Roebuck further argues for a less deferential standard because USAble Life breached its fiduciary duty by improperly ignoring relevant evidence and relying on unqualified nurses to decide her claim. Neither argument is persuasive.

The dual role played by USAble Life as administrator of the Policy and claim evaluator is generally recognized as a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 111–12 (2008). But, this conflict of interest is only one of many factors weighed in the abuse of discretion analysis. *Id.* at 115. Courts determine what weight to give an insurer's conflict of interest on a case-by-case basis, and we give greater weight to situations in which (1) "the insurer's claims review process was tainted by bias"; (2) the medical professionals reviewing the claim were employed by the insurer; (3) the medical professionals reviewing the claim had their compensation tied to their findings; or (4) "the insurer acted as little more than a rubberstamp for favorable medical opinions." *Boyd*, 879 F.3d at 320–21 (quoting *Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 661 (8th Cir. 2017)). "But when the record 'contains no evidence about [the plan administrator]'s "claims administration history or its efforts to ensure that claims assessment is not affected by the conflict," [the court] only "give[s] the conflict some weight."'" *Id.* at 321 (alterations in original) (quoting *Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F.3d 1036, 1039 (8th Cir. 2017)).

Until recently, some courts have used a less deferential standard of review if a claimant showed "a 'serious procedural irregularity existed which caused a serious

---

before the district court or briefed for this court, we decline to consider the newly submitted authority at this time. *Twin Cities Galleries, LLC v. Media Arts Grp., Inc.*, 476 F.3d 598, 602 n.1 (8th Cir. 2007).

breach of the plan trustee's fiduciary duty to the plan beneficiary.'" *Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865, 869 (8th Cir. 2008) (quoting *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996)). However, after briefing closed in this appeal, we held procedural irregularities do not trigger de novo review. *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 963 (8th Cir. 2020). Thus, any irregularities present in USAble Life's review of Roebuck's claim are only factors to be considered in the court's abuse of discretion review.

Accordingly, we hold abuse of discretion is the appropriate standard of review for USAble Life's denial of Roebuck's claim.

## C. Adjudication of Roebuck's Disability Claim

Roebuck appeals USAble Life's failure to (1) use an independent medical professional in reviewing her claim and (2) award disability benefits based on her radiculopathy diagnosis. We review Roebuck's challenges for abuse of discretion. Abuse of discretion, however, is evaluated differently depending on whether the challenge is based on plan application or plan interpretation. We address challenges to USAble Life's application of the Policy under the substantial evidence standard and challenges to its interpretation of the Policy under the five-factor *Finley* test. *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 537 (8th Cir. 2020) (stating where "an administrator evaluates facts to determine the plan's application in a particular case . . . the substantial evidence test governs our review" (ellipses in original) (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 899 n.9 (8th Cir. 1996))); *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 620–22 (8th Cir. 1992).

As an examination of Roebuck's argument demonstrates, the distinction between a challenge based on plan application and plan interpretation is not always clear cut. Roebuck initially characterizes her claim as a challenge to USAble Life's "application" of the occupation test in the Policy. Roebuck then outlines two arguments in support of this challenge: (1) USAble Life's application of the

occupation test disregarded ERISA's requirements (incorporated in the Policy) regarding evaluation of her claim by an appropriate medical professional; and (2) USAble Life ignored Policy language that implicitly accepts radiculopathy as a disabling condition. The first of the two arguments was presented largely as one of Policy application. Yet, it encompasses an underlying argument that Policy language (as incorporated from ERISA) was interpreted too broadly. The second argument is clearly one of Policy interpretation. Thus, our analysis will necessarily reflect consideration of both of these components of Roebuck's challenge.

### 1. Medical Professional Review

Roebuck argues USAble Life improperly relied on the opinion of an in-house nurse in denying her claim, and USAble Life's failure to seek the opinion of an independent medical professional violated ERISA regulation 29 C.F.R. § 2560.503-1(h)(3)(iii).[4] We disagree. Because this issue challenges both USAble Life's interpretation and application of the Policy, we review under both the *Finley* factors and the substantial evidence standard.

### a. *Finley* Analysis

Roebuck argues USAble Life's interpretation of the Policy was flawed because its use of an in-house nurse failed to provide the appropriate medical review required under ERISA. When reviewing whether an administrator's *plan interpretation* constitutes an abuse of discretion, we consider whether: (1) "the administrator's interpretation is consistent" with the Policy's goals; (2) the administrator's interpretation renders any of the Policy's language "meaningless or internally inconsistent"; (3) the "administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute"; (4) "the administrator has interpreted the relevant terms consistently"; and (5) the interpretation contradicts

---

[4]The Policy incorporates this regulation by reference.

the Policy's clear language. *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002) (summarizing the five-factor test set forth in *Finley*).

Analyzing the first factor, we conclude USAble Life's use of an in-house nurse was consistent with the Policy's goals. The ERISA regulation at issue requires USAble Life to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). The regulation also requires that the chosen medical professional provide independent evaluations of claims. *Id.* at (h)(3)(v). A nurse is a health care professional, and whether a nurse or any other professional has appropriate training and experience depends on the facts of the case. There is no evidence in the record demonstrating that Nurse Benwell did not possess the proper training and experience to review Roebuck's claim. Additionally, despite the inherent conflict of interest, there is no evidence in the record demonstrating that USAble Life's interpretation of the Policy was intended to or resulted in preventing its in-house nurse from providing her independent, professional opinion on claims for benefits. Therefore, we conclude USAble Life's use of an in-house nurse was consistent with the goals of the Policy.

Second, USAble Life's use of an in-house nurse did not render any of the Policy's language meaningless or inconsistent. The ERISA regulation does not explicitly discuss whether nurses qualify as medical professionals. We have held that 29 C.F.R. § 2560.503-1(h)(3)(iii) only requires "a full and fair review of [the] claim," which can be achieved with a nurse's review and medical opinion. *Cooper*, 862 F.3d at 662–63 (quoting *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1038 (8th Cir. 2016)). The regulation does not exclude nurses from the category of medical professionals "in the field of medicine involved in the medical judgment" qualified to review a claim for disability benefits. 29 C.F.R. § 2560.503-1(h)(3)(iii). Therefore, USAble Life's interpretation of the Policy allowing an in-house nurse to review Roebuck's claim did not render the language of the Policy meaningless or inconsistent.

Third, we conclude USAble Life did not breach ERISA's substantive or procedural requirements by interpreting the Policy to allow a nurse to review Roebuck's medical records or make recommendations denying Roebuck's claim. While ERISA requires insurers to consult with medical professionals who have "appropriate training and experience in the field of medicine involved in the medical judgment," the regulation is flexible on the level of education or professional training necessary to qualify as a medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii). We agree with the Sixth Circuit that there is no per se rule that precludes an administrator from consulting a nurse rather than a physician in deciding an administrative appeal. *See Boone v. Liberty Life Assurance Co. of Bos.*, 161 F. App'x 469, 474 (6th Cir. 2005). Therefore, USAble Life's interpretation of the Policy did not breach ERISA's substantive or procedural requirements.

Because of the lack of evidence in the record regarding USAble Life's past interpretations of the provision, we consider the fourth *Finley* factor a neutral factor.

Finally, USAble Life's interpretation of the Policy does not contradict the Policy's clear language. As discussed, there is no basis to conclude the in-house nurse assigned to review Roebuck's claim did not qualify as a medical professional. And, USAble Life's interpretation of the regulation allowing nurse review of Roebuck's claim does not contradict the plain terms of the ERISA regulation. The terms of the Policy do not require USAble Life to employ an independent medical professional to refute the opinions of Roebuck's treating physicians. The ERISA regulation only requires a full and fair review of Roebuck's claim by an unbiased medical professional. That standard was met by Nurse Benwell's review of Roebuck's claim. Therefore, we hold USAble Life did not abuse its discretion in its interpretation of the Policy or use of an in-house nurse to review Roebuck's claim.

### b. Substantial Evidence Analysis

Under the abuse of discretion standard, we will uphold USAble Life's "decision so long as it is reasonable and supported by substantial evidence." *Cooper*,

862 F.3d at 660. "Substantial evidence is more than a scintilla, but less than a preponderance, of evidence." *Sepulveda-Rodriguez v. MetLife Grp., Inc.*, 936 F.3d 723, 729 (8th Cir. 2019). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." *Id.* (quoting *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 989 (8th Cir. 2014)). An insurer's "decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him." *Boyd*, 879 F.3d at 319 (quoting *Green v. Union Sec. Ins.*, 646 F.3d 1042, 1050 (8th Cir. 2011)). To determine this, we look to the record that was before the administrator of the plan at the time the claim was denied. *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 974–75 (8th Cir. 2003).

As discussed, nurses can provide a full and fair review and medical opinion to satisfy the requirements of 29 C.F.R. § 2560.503-1(h)(3)(iii). *Cooper*, 862 F.3d at 662–63. Both parties agree an independent physical therapist performed the FCE, and the results of the independent FCE found Roebuck could perform work with a sedentary physical demand level for eight hours a day for forty hours a week. This is especially significant since Roebuck's occupation was performed at a sedentary level of physical demand according to the vocational review. The independent FCE serves as the most important piece of evidence to support USAble Life's denial of Roebuck's claim. *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002) (stating an FCE "alone constitutes more than a scintilla of evidence" in finding the results of an FCE support an administrator's denial of benefits even where there is competing evidence from claimant's treating physician). Absent a finding that disrupted the FCE results, USAble Life was well within its discretion to deny Roebuck's claim, and USAble Life's reliance on Nurse Benwell's opinion does not conflict with the substantive or procedural requirements of the Policy or ERISA.

Even accounting for USAble Life's inherent conflict of interest, we hold USAble Life did not abuse its discretion in denying Roebuck's claim. While there is evidence in the record of Roebuck's various medical diagnoses, Nurse Smith noted the opinions of Roebuck's treating physicians were inconsistent. And, even

after Roebuck's submission of additional evidence of her medical issues, Nurse Benwell concluded there was not persuasive evidence in the record showing Roebuck was disabled or that the results of the FCE should be disturbed. Accordingly, we conclude substantial evidence supports USAble Life's denial of Roebuck's claim.

## 2. Radiculopathy Diagnosis

Lastly, Roebuck argues that USAble Life ignored her radiculopathy diagnosis in denying her claim, and that an award of benefits is required because radiculopathies are excepted from the definition of "Special Conditions" under the Policy. We disagree, concluding Roebuck's radiculopathy diagnosis did not automatically entitle her to benefits under the Policy.

Analyzing the first *Finley* factor, we conclude USAble Life's interpretation of the "Special Conditions" provision of the Policy is consistent with the Policy's goals. The discretionary clause gives USAble Life authority to determine which claims qualify for benefits. In this case, the Policy allows for benefits to be paid only if Roebuck is disabled, and the "Special Conditions" provision of the Policy does not materially alter this requirement. Roebuck's medical records and the FCE demonstrate Roebuck's ailments do not prevent her from performing sedentary work. Nurse Benwell considered Roebuck's radiculopathy diagnosis prior to recommending denial of Roebuck's claim. And, Nurse Benwell found Roebuck's radiculopathy diagnosis was insufficient to disturb the FCE findings because Roebuck's diagnoses were "inconsistent among providers." Accordingly, we conclude USAble Life's interpretation was consistent with the Policy's goals.

Second, we evaluate whether USAble Life's interpretation of the Policy renders any of the Policy's language meaningless or internally inconsistent. Roebuck argues the denial of her claim violated those terms because the Policy expressly excepted radiculopathies from the definition of "Special Conditions," and USAble Life failed to consider Roebuck's radiculopathy diagnosis in denying her

claim. The record does not demonstrate USAble Life completely ignored Roebuck's radiculopathy diagnosis. Instead, the record reflects Nurse Benwell considered Roebuck's post-FCE medical records, noted Roebuck's physical fitness level had changed, and found there was insufficient evidence to upset an earlier finding that Roebuck was not disabled within the Policy's terms. Accordingly, we conclude USAble Life's denial of Roebuck's claim did not render the Policy's terms meaningless or internally inconsistent, even in light of Roebuck's radiculopathy diagnosis.

Next, we must consider whether USAble Life's interpretation conflicted with ERISA's substantive or procedural requirements and whether USAble Life has interpreted relevant Policy terms consistently. Based on an absence of relevant argument and evidence in the record, we view these as neutral factors.

Regarding the fifth *Finley* factor, USAble Life's interpretation does not contradict the Policy's clear language. Not only did the Policy give USAble Life the ability to determine a claimant's eligibility for benefits, but the plain terms of the Policy require a finding of disability prior to payment of a claim. The plain terms of the Policy except radiculopathies from the definition of "Special Conditions," but the terms of the Policy do not state that any radiculopathy diagnosis entitles a claimant to benefits. In this case, Dr. Putty diagnosed Roebuck with radiculopathy, but Dr. Putty did not state Roebuck was disabled or unable to perform sedentary work. There is no support in the record for Roebuck's position that a radiculopathy diagnosis, absent a finding of disability, entitles her to benefits under the Policy. Therefore, USAble Life's interpretation does not contradict the Policy's clear language.

The judgment of the district court is affirmed.

_____

-14-