# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2275

_____

Darrin Shafer

*Plaintiff - Appellant*

v.

Zimmerman Transfer, Inc.; Benefit Plan Administrators of Eau Claire, LLC

*Defendants - Appellees*

The Phia Group, LLC; Midlands Choice, Inc.

*Defendant*s

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: April 13, 2023
Filed: June 7, 2023

_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Darrin Shafer appeals the district court's[1] grant of summary judgment to Zimmerman Transfer, Inc. and Benefit Plan Administrators of Eau Claire, LLC ("BPA") on his claim for health insurance benefits under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). We affirm.

## I.

In April 2015, Shafer underwent bariatric surgery to lose weight. A few months later, Shafer began working for Zimmerman and became a participant in its self-insured employee benefit plan. Zimmerman is the plan administrator, and BPA served as the third-party administrator until January 2020.

The plan's schedule of benefits lists various covered services like emergency-room services, hospital services, urgent care, and preventative-care services. The plan's "benefits . . . are payable for Medically Necessary Covered Expenses Incurred by a covered individual while covered for this benefit if . . . [they] are not excluded under the exceptions provisions of the policy." Likewise, "Scheduled Benefits are based upon Covered Expenses not otherwise limited or excluded under the terms of the Plan." Under a section titled "Charges Not Covered," the plan excludes "treatment . . . in connection with weight reduction, including . . . any procedure performed to alter the digestive process for the purpose of weight loss," and "treatment, service or supplies due to complications of a non-Covered Expense." It is undisputed that Shafer's bariatric surgery would not be covered under the plan.

In 2017, Shafer went to the emergency room complaining of nausea, vomiting, and abdominal pain. Doctors determined he had a bowel obstruction, which was caused by his prior bariatric surgery. They got his nausea and pain under

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

control and admitted him for monitoring. When Shafer began vomiting again, he was transferred to Nebraska Methodist Hospital where Dr. Gary Anthone had performed his bariatric surgery. Dr. Anthone then surgically fixed Shafer's bowel obstruction.

Although BPA initially precertified Shafer's treatment, it later denied his claim for benefits after having a physician conduct an independent medical review of his claim. The physician concluded that "the hernia surgery is considered a complication of the patient's prior bariatric surgery and excluded from coverage." Nebraska Methodist appealed the claim on Shafer's behalf. The physician again concluded the treatment was not covered because "complications of bariatric surgery are non-covered services." Then, Dr. Anthone also appealed on Shafer's behalf. Zimmerman denied Shafer's claim yet again, and the physician reviewer noted that Dr. Anthone agreed that the bowel obstruction and hernia repair were related to the prior bariatric surgery. The physician reviewer was paid for each review.

Shafer next requested an external review. The external physician reviewer also recommended denying Shafer's claim because the plan does not cover claims for obesity or complications related to obesity procedures and because the treatment "was not medically necessary." The external reviewer was paid by BPA, but the reviewer certified that his payment had no effect on his conclusion.

After exhausting his administrative appeals, Shafer sued BPA and Zimmerman for benefits under § 1132(a)(1)(B).[2] He then moved for summary judgment against BPA and Zimmerman. Both defendants filed cross-motions for summary judgment, which the district court granted. Shafer appeals.

---

[2]Shafer also brought claims for interference with protected ERISA rights and breach of fiduciary duty, but those claims were dismissed and are not at issue in this appeal.

## II.

Before addressing the merits of Shafer's claim, we first must determine whether Shafer has standing to sue. *See Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013). "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Id.* It must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 870 (internal quotation marks omitted).

BPA argues that Shafer lacks standing to sue it because it is no longer the third-party administrator for the plan, so Shafer's injury—being denied benefits—is no longer redressable by BPA.[3] BPA cites *Hall v. LHACO, Inc.*, where we held that a plan participant's § 1132(a)(1)(B) claim was not redressable against a former third-party claims administrator because it could no longer pay benefits or enforce the plan participant's rights under the plan. 140 F.3d 1190, 1195-96 (8th Cir. 1998). We therefore concluded that the plan participant lacked standing to sue the third-party administrator. *Id*. *Hall* relied on § 1132(d)(2), which states, "Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." *Id.* at 1196.

Since *Hall*, however, the Supreme Court has made clear that claims-processing rules and elements of a cause of action are distinct from limitations on subject-matter jurisdiction. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010). "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related

---

[3]Zimmerman does not dispute that Shafer has standing to sue it.

determination." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006). To determine whether a provision is jurisdictional, we look to whether "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Id.* at 515. "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

The provision relied on in *Hall* does not implicate jurisdiction. Section 1132(d)(2) addresses only the *enforceability* of a money judgment ordered as relief for a claim under § 1132. It does not mention jurisdiction; indeed, the following subsection, § 1132(e), expressly references jurisdiction and provides no jurisdictional limitation on who can be sued under § 1132. Accordingly, we conclude that, after *Arbaugh*, the fact that a plan participant might not be able to enforce a money judgment against a former third-party administrator does not mean that he lacks standing to sue that defendant. Shafer therefore has standing to sue BPA.

## III.

We now turn to the merits of Shafer's claim for benefits. We review a district court's grant of summary judgment *de novo*, "considering all evidence in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Silva v. Metro. Life Ins.*, 762 F.3d 711, 718 (8th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the defendants' denial of benefits for abuse of discretion because Shafer's plan gives the plan administrator discretionary authority to determine eligibility and construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Under abuse-of-discretion review, we reverse the plan administrator's decision only if it was arbitrary and capricious, meaning it was unreasonable or

unsupported by substantial evidence. *Roebuck v. USAble Life*, 992 F.3d 732, 740 (8th Cir. 2021); *Miller v. Hartford Life & Accident Ins.*, 944 F.3d 1006, 1010-11 (8th Cir. 2019). The standard of review does not change even if the plan administrator has a conflict of interest, but we consider it when determining whether the plan administrator abused its discretion. *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 116 (2008); *McIntyre v. Reliance Standard Life Ins.*, 972 F.3d 955, 963 (8th Cir. 2020).

To determine whether the plan administrator's interpretation of the plan was reasonable, we consider the following factors: (1) whether the administrator's interpretation is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation. *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir. 2010) (citing *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617 (8th Cir. 1992)).

Shafer makes several arguments why there was an abuse of discretion. First, he argues that the defendants were required to cover his emergency treatment under Iowa Code § 514C.16 and an implementing regulation of the Affordable Care Act ("ACA"), 45 C.F.R. § 147.138(b)(2).[4] We disagree. Those provisions do not require that a plan cover all emergency services; rather, they require plans that already cover emergency services to satisfy additional requirements like covering out-of-network treatment. Moreover, the provisions state that coverage is subject to a plan's exclusions. Iowa Code § 514C.16.1; 45 C.F.R. § 147.138(b)(2)(v)(A).

Because Shafer's plan specifically excludes coverage of treatment for complications of weight-reduction surgery, neither Iowa law nor the ACA require

---

[4]The district court held that Shafer had waived his ACA argument by not raising it prior to his motion. We need not decide this issue because we conclude his argument fails on the merits.

that his treatment be covered. His plan states, "Subject to the provisions, exceptions and limits of the policy, the benefits, as shown below, are payable for Medically Necessary Covered Expenses Incurred by a covered individual while covered for this benefit if . . . [they] are not excluded under the exceptions provisions of the policy." Further, covered expenses are "determined based upon all Other Plan provisions." Bariatric surgery is a non-covered expense, and his plan excludes coverage for "treatment, service or supplies due to complications of a non-Covered Expense." It is undisputed that Shafer's treatment was due to a complication of his prior bariatric surgery. Thus, Iowa law and the ACA do not require that his treatment be covered.

Second, Shafer argues that the interpretation of the plan was contrary to the plan's clear language because the plan covers emergency services without any exclusions and because his treatment was medically necessary.[5] We disagree because, again, Shafer's plan excludes coverage for complications resulting from bariatric surgery. That his treatment was medically necessary does not make it a "Medically Necessary Covered Expense."

Third, Shafer argues that the interpretation of the plan is inconsistent with the plan's goal, which, according to him, is to obtain the best outcome for beneficiaries. The stated goal of the plan is to

> help offset . . . the economic effects arising from a Non-occupational Injury or Illness. To accomplish this purpose, the Plan Sponsor must be cognizant of the necessity of containing health care costs through effective plan design . . . to allow the Plan Sponsor to allocate the resources available to help those individuals participating in the Plan to the maximum feasible extent.

---

[5]The external reviewer stated that Shafer's treatment was not medically necessary, and BPA admits that was an error. But that determination was not dispositive. The external reviewer and the other physician reviewer concluded that Shafer's treatment was not covered because it resulted from a complication of his bariatric surgery, a non-covered expense.

Again, we disagree with Shafer. Imposing and enforcing coverage limitations, even if it results in a plan participant paying large medical bills, is not inconsistent with the plan's goal because the plan must allocate limited resources among all plan participants. *See Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 540 (8th Cir. 2020).

Lastly, Shafer argues that there was a conflict of interest because the physician reviewers were paid by BPA, which biased the decisions of the reviewers. The only evidence of bias Shafer mentions is that the internal and external physician reviewers were paid to review his claim. The external reviewer certified he was not paid based on the outcome he reached. Shafer has not shown how the purported conflict of interest impacted his claims decision. Thus, even assuming that the reviewers being paid by BPA constituted a conflict of interest, we give it little weight in the multi-factor abuse-of-discretion analysis. *See Khoury v. Grp. Health Plan, Inc*., 615 F.3d 946, 953 (8th Cir. 2010) (explaining that "the existence of a conflict should be weighed more heavily 'where circumstances suggest a higher likelihood that it affected the benefits decision'" (quoting *Glenn*, 554 U.S. at 117)).

In sum, we conclude that there was no abuse of discretion in denying Shafer's claim for benefits because the interpretation of the plan was reasonable and the decision to deny benefits was supported by substantial evidence.

**IV.**

For the foregoing reasons, we affirm the district court's grant of summary judgment to Zimmerman and BPA.

_____