# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2782

_____

Christopher Hampton,

*Plaintiff - Appellee,*

v.

Reliance Standard Life Insurance Company; Ozark Motor Lines Inc. Benefit Plan,

*Defendants - Appellants.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: April 17, 2014
Filed: October 7, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

After being diagnosed with insulin-dependent diabetes mellitus, Christopher Hampton ceased work as an over-the-road truck driver for Ozark Motor Lines, Inc. Pursuant to the company's employee-benefit plan—Ozark Motor Lines Inc. Benefit Plan—which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, Hampton submitted a claim for long-term

disability benefits to Reliance Standard Life Insurance Company, the Plan's insurer and claims-review fiduciary. Reliance Standard concluded that Hampton was not disabled under the terms of the Plan and denied the claim on that basis.

Hampton sued Reliance Standard and the Plan, arguing that Reliance Standard abused its discretion. The district court granted judgment on the record for Hampton. Reliance Standard and the Plan appeal, and we reverse.

I.

From July 2008 to November 2010, Hampton worked as an over-the-road truck driver for Ozark Motor Lines, Inc. In November 2010, Hampton was diagnosed with diabetes mellitus. As a result of Hampton's diagnosis, he was unable to continue work as an over-the-road truck driver: Regulations of the United States Department of Transportation provide that any person with insulin-dependent diabetes mellitus is not qualified to operate a commercial motor vehicle. *See* 49 C.F.R. §§ 391.11, 391.41(b)(3). As a result, Arkansas disqualified his commercial driver's license. *See* 001-00-004 Ark. Code R. 17.1.

Hampton filed claims for short-term and long-term disability benefits under the Plan. In support of his claims, he submitted a December 2010 statement from William Hawkins, M.D., the doctor who had diagnosed him, stating that Hampton could not work because he was "unable to obtain a DOT health card with this new diagnosis." Dr. Hawkins wrote a follow-up letter to Reliance Standard in June 2011 repeating that he "d[id] not feel that Mr. Hampton will be able to obtain gainful employment noting his insulin dependent diabetes mellitus, which precludes him from operating any sort of heavy machinery or motorized vehicles based on the Department of Transportation regulations."

Hampton received short-term benefits, but Reliance Standard denied his claim for long-term benefits. To qualify as "Totally Disabled" under the Plan's long-term disability policy, an insured must be unable to perform the material duties of his regular occupation due to injury or sickness. The Plan further provides that if the insured "requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute 'Total Disability.'" In its July 2011 denial letter, Reliance Standard explained that although Hampton's submission asserted that his diagnosis of diabetes mellitus precluded him from maintaining a commercial driver's license under the federal regulations, there was no evidence that any symptoms of diabetes mellitus prevented him from performing his occupation under the terms of the Plan.

Hampton filed an administrative appeal with Reliance Standard in January 2012, arguing that the diabetes-related loss of his commercial driver's license prevented him from performing his job duties. In May 2012, Reliance Standard upheld the denial, reasoning that the Plan "explains that loss of a license does not constitute disability" and that "there must be evidence that one is physically or mentally incapable of performing the material duties of his occupation as a truck driver" to qualify as totally disabled. Dr. Hawkins's submissions, the decision maintained, referred only to the federal regulations and "failed to identify any specific restrictions or limitations Mr. Hampton suffered due to insulin-dependent diabetes, nor provide any insight as to how Mr. Hampton's symptoms were preventing him from performing his duties as a truck driver." Reliance Standard also cited the conclusions of another doctor, who had reviewed Hampton's claim file and found that "there was no evidence to substantiate [Hampton's] inability to perform the duties of a truck driver, other than the regulation set forth by the Department of Transportation."

Hampton sued Reliance Standard in Arkansas state court in July 2012, and Reliance Standard removed the case to federal court. Hampton then filed an amended

complaint, naming both Reliance Standard and the Plan as defendants. The amended complaint alleged that Reliance Standard unreasonably denied his claim for long-term disability benefits. The parties filed cross-motions for judgment on the administrative record, and the district court entered judgment for Hampton. The court also ordered Reliance Standard and the Plan to pay Hampton attorneys' fees and costs.

The district court reasoned first that although Reliance Standard had discretion to interpret the Plan, less deference than usual was appropriate, because Reliance Standard was also responsible for paying benefits under the Plan. The court then concluded that Reliance Standard abused its discretion by adopting an unreasonable interpretation of the Plan as applied to Hampton. The court determined that Hampton was totally disabled under the terms of the Plan, because he lost his license "as a result of an Injury or Sickness," namely his insulin-dependent diabetes mellitus. Citing the Department of Transportation's medical advisory criteria for evaluation under 49 C.F.R. § 391.41, the district court noted that the federal government forbids insulin-dependent diabetics from operating commercial motor vehicles because the stresses of long-haul driving exacerbate the symptoms of diabetes.

Reliance Standard and the Plan appeal, and we review the district court's grant of judgment on the record *de novo*. *See McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012).

## II.

Where, as here, an ERISA-governed employee-benefit plan grants the plan administrator or another fiduciary discretion to interpret the plan and to determine eligibility for benefits, we review the fiduciary's decision for abuse of discretion. *See Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580-81 (8th Cir. 2008). Under this standard of review, we must uphold Reliance Standard's decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial

-4-

evidence. *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-1000 (8th Cir. 2005) (en banc). Where a fiduciary both evaluates claims for benefits and pays benefits claims, the court still applies the deferential abuse-of-discretion standard, but the fiduciary's conflict of interest is one factor to be considered in the review. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 115-18 (2008).

We first address Reliance Standard's interpretation of the terms of the Plan. The Plan provides for benefits in the event of "Total Disability," which occurs when "as a result of an Injury or Sickness . . . , an Insured cannot perform the material duties of his/her Regular Occupation." The Plan further provides that "[i]f an Insured . . . requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute 'Total Disability.'" Reliance Standard interpreted this language to require "evidence that one is physically or mentally incapable of performing the material duties of his occupation," independent of his loss of a license. Hampton argues, and the district court agreed, that a claimant qualifies for benefits under the Plan if he lost his license as a result of an injury or sickness.

We conclude that Reliance Standard's interpretation of the Plan is reasonable. The loss-of-license provision states that the loss of a license *for any reason* is insufficient in and of itself to entitle a claimant to benefits. Diagnosis with diabetes mellitus caused Hampton to lose his license, but that is not enough by itself to justify benefits. Reliance Standard's interpretation does not foreclose a claimant who loses his license based on injury or sickness from receiving benefits; it merely requires that the claimant show that the injury or sickness itself—independent of the loss of license—renders him unable to perform his occupation.

Under Hampton's contrary interpretation, loss of license by itself does not entitle the claimant to benefits if the loss is for a *non-medical reason*, but it would be sufficient if the license is lost due to sickness or injury. This interpretation would render the loss-of-license provision surplusage. The definition of "Total Disability"

includes only inability to work due to injury or sickness, so a driver who is unable to drive for non-medical reasons (*e.g.*, a failed drug test or a bad driving record) would not qualify for benefits in the first place. For the loss-of-license provision to have force, it must apply to a loss of license based on the driver's health. At a minimum, it was reasonable for the fiduciary to adopt an interpretation that avoids rendering the policy language meaningless. *See King*, 414 F.3d at 999. Although Reliance Standard's conflict of interest in serving both as claims-review fiduciary and payer of benefits is a factor to be considered in the analysis, Reliance Standard advances the better reading of the disputed provision, and this is not the sort of case in which the fiduciary's conflict likely was determinative. *See Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 946 (8th Cir. 2010).

We next consider whether Reliance Standard's determination that Hampton was not totally disabled was supported by substantial evidence—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999 (internal quotation omitted). Reliance Standard explained its view of the evidence in its denial of Hampton's appeal. Although Hampton's physician, Dr. Hawkins, opined that Hampton would be unable to work as an over-the-road truck driver based on the Department of Transportation's regulations, he identified no physical limitations on Hampton's ability to do so as a direct result of his diabetes. Reliance Standard also asked another doctor to review Hampton's claim file, and that doctor found no evidence that diabetes mellitus impaired Hampton's ability to perform his occupation.

Based on the evidence before it, Reliance Standard's denial of benefits was reasonable. The materials from Dr. Hawkins explained only that Hampton would be unable to work due to the Department of Transportation's regulations. The materials did not independently link Hampton's inability to work to the symptoms of his diabetes mellitus. It was reasonable for Reliance Standard to view those submissions

as insufficient to show that Hampton was physically or mentally incapable of working as an over-the-road truck driver due to his diabetes mellitus.

Hampton cites the Department of Transportation's medical advisory criteria for evaluation under 49 C.F.R. § 391.41, which effectively apply an irrebuttable presumption that a person afflicted with insulin-dependent diabetes is at risk of passing out, becoming disoriented, or going into a diabetic coma or shock while working as an over-the-road truck driver. But the Plan requires a claimant like Hampton to present evidence that his illness actually presents those risks; for whatever reason, Hampton did not do so. It was permissible for Reliance Standard to require some evidence specific to Hampton, as opposed to the generalizations upon which the government sometimes must rely in its regulatory capacity to avoid significant administrative burdens. *See Ward v. Skinner*, 943 F.2d 157, 162-64 (1st Cir. 1991). Again, while the fiduciary's conflict of interest is relevant, the record does not show a history of biased claim administration or other circumstances suggesting a high likelihood that the fiduciary's financial incentives drove the evidentiary determination here. *See Glenn*, 554 U.S. at 117-18; *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1053-54 (8th Cir. 2011).

\* \* \*

The judgment of the district court is reversed. Because Hampton is no longer the prevailing party in the suit, we also vacate the district court's award of attorneys' fees and costs.

SMITH, Circuit Judge, dissenting.

I respectfully dissent. Like the district court, I conclude that Reliance Standard abused its discretion in denying Hampton long-term disability benefits. Specifically, in reaching its decision, Reliance Standard failed to consider relevant federal

-7-

regulations specifically referenced by Hampton's physician. I would affirm the judgment of the district court.

Where "'the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'" we review the administrator's decision for abuse of discretion. *Siegel v. Conn. Gen. Life Ins. Co.*, 702 F.3d 1044, 1049 (8th Cir. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "'A plan administrator abuses its discretion when it ignores relevant evidence.'" *Gerhardt v. Liberty Assurance Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013) (quoting *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 701 (8th Cir. 2009)).

"[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (quotation and citation omitted). "[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Glenn*, 554 U.S. at 117. In these cases, "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id*. Where "the record in [a] case contains little evidence about either [the administrator's] claims administration history or its efforts to ensure that claims assessment is not affected by the conflict," "this Court gives the conflict *some* weight." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010) (emphasis added).

Here, Reliance Standard relies on the loss-of-license clause in the Plan to argue that Hampton's loss of his commercial driver's license does not alone constitute "Total Disability." Reliance Standard's interpretation of this clause is reasonable—a loss of license alone does not equate to, or is not determinative of, "Total Disability."

However, Hampton's case includes more than the absence of a license; it includes proof of the presence of a disabling physical condition. The question is whether other evidence exists that Hampton is "Totally Disabled" because he cannot "perform the material duties of" a long-haul truck driver "due to an Injury or Sickness." I find that there is evidence apart from the loss of license demonstrating Hampton's "Total Disability"—specifically, the federal regulations—that Reliance Standard failed to consider in denying Hampton's claim for long-term disability benefits. *See Gerhardt*, 736 F.3d at 780.

The relevant Federal Motor Carrier Safety Regulations define the "general qualifications of drivers" as follows:

> (a) A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.
>
> (b) Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she . . .
>
> > (4) Is *physically qualified* to drive a commercial motor vehicle in accordance with subpart E--Physical Qualifications and Examinations of this part . . . .

49 C.F.R. § 391.11 (emphasis added).

In turn, the federal regulations set forth the "physical qualifications for drivers," providing:

> (a)(1)(i) A person subject to this part must not operate a commercial motor vehicle unless he or she is *medically certified as physically*

*qualified* to do so, and, . . . when on-duty has on his or her person the original, or a copy, of a current medical examiner's certificate that he or she is *physically qualified* to drive a commercial motor vehicle . . . .

\* \* \*

(b) A person is *physically qualified* to drive a commercial motor vehicle if that person—

\* \* \*

    (3) Has no established medical history or clinical diagnosis of *diabetes mellitus currently requiring insulin for control* . . . .

49 C.F.R. § 391.41 (emphases added).

The United States Department of Transportation (DOT) has provided the following regulatory guidance for interpreting § 391.41:

Question 1: Who is responsible for ensuring that medical certifications meet the requirements?

Guidance: Medical certification determinations are the responsibility of the medical examiner. The motor carrier has the responsibility to ensure that the medical examiner is informed of the minimum medical requirements and the characteristics of the work to be performed. The motor carrier is also responsible for ensuring that only *medically qualified drivers* are operating CMVs in interstate commerce.

\* \* \*

Question 3: What are the *physical qualification requirements* for operating a CMV in interstate commerce?

-10-

Guidance: The physical qualification regulations for drivers in interstate commerce are found at §391.41. Instructions to medical examiners performing physical examinations of these drivers are found at §391.43. Interpretive guidelines are distributed upon request.

The qualification standards cover 13 areas which directly relate to the driving function. All but four of the standards require a judgement by the medical examiner. A person's qualification to drive is determined by a medical examiner who is knowledgeable about the driver's functions and whether a particular condition would interfere with the driver's ability to operate a CMV safely. In the case of vision, hearing, *insulin-using diabetes*, and epilepsy, the current standards are absolute, providing no discretion to the medical examiner.

Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 FR 16370-01, 1997 WL 153864, at *16410–11 (DOT Apr. 4, 1997).

In turn, the Medical Advisory Criteria for Evaluation applicable to § 391.41(b)(3) states:

A person is *physically qualified* to drive a commercial vehicle if that person:

Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.

Diabetes mellitus is a disease which, on occasion, can result in a loss of consciousness or disorientation in time and space. Individuals who require insulin for control have conditions which can get out of control by the use of too much or too little insulin, or food intake not consistent with the insulin dosage. Incapacitation may occur from symptoms of hyperglycemic or hypoglycemic reactions (drowsiness, semiconsciousness, diabetic coma, or insulin shock).

The administration of insulin is within itself, a complicated process requiring insulin, syringe, needle, alcohol sponge and a sterile technique. Factors related to long-haul commercial motor vehicle operations such as fatigue, lack of sleep, poor diet, emotional conditions, stress, and concomitant illness, compound the diabetic problem. Because of these inherent dangers, the FMCSA[1] has consistently held that a diabetic who uses insulin for control *does not meet the minimum physical requirements of the FMCSRs*.[2]

(Emphases added.)

In the present case, Dr. Hawkins opined in his June 2011 letter to Reliance Standard that he "d[id] not feel that Mr. Hampton will be able to obtain gainful employment noting his insulin dependent diabetes mellitus, which precludes him from operating any sort of heavy machinery or motorized vehicles *based on the Department of Transportation regulations* [("DOT regulations")]." Appellants' App. at 78 (emphasis added). Although Dr. Hawkins makes only a general reference to the DOT regulations, his reference to Hampton's "insulin dependant diabetes mellitus" makes clear that he was referencing 49 C.F.R. § 391.41(b)(3). In rendering his medical opinion, Dr. Hawkins *never* stated that Hampton was physically incapable of performing the material duties of his job because he could not obtain a license; instead, he opined that Hampton could not perform such duties "based on the Department of Transportation regulations." As detailed *supra*, these regulations and the accompanying guidance make clear that Hampton, who no one disputes is insulin-dependent with diabetes mellitus, is *physically* disqualified from driving a long-haul commercial vehicle because of the delineated risks and inherent dangers arising from his sickness. Put another way, Hampton is physically incapable of performing the material duties of a long-haul truck driver because of diabetes mellitus.

---

[1]Federal Motor Carrier Safety Administration

[2]Federal Motor Carrier Safety Regulations

In denying Hampton benefits, Reliance Standard *never* referred to the relevant federal regulations in conjunction with Dr. Hawkins's June 2011 letter. In doing so, it failed to consider all relevant evidence. *See Gerhardt*, 736 F.3d at 780. Taking into account's Reliance Standard's position as both administrator and insurer, I conclude that Reliance Standard abused its discretion in denying Hampton long-term disability benefits. *See id*. Accordingly, I would affirm the judgment of the district court.

_____