# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-3876

———————————————

Adam Ruessler

*Plaintiff - Appellant*

v.

Boilermaker-Blacksmith National Pension Trust Board of Trustees

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri

——————————

Submitted: September 20, 2022
Filed: April 3, 2023

——————————

Before SHEPHERD, KELLY, and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

The Boilermaker-Blacksmith National Pension Trust Board of Trustees ("Board") denied Adam Ruessler's application for disability pension benefits under a plan governed by the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. §§ 1001–1461. Ruessler argues the Board's stated reason for denying his application was unreasonable, and the Board violated its fiduciary

duties. The district court[1] granted the Board's motion for summary judgment. Ruessler appeals, and we affirm.

## I. Background

The Board administers the Boilermaker-Blacksmith National Pension Trust ("Pension Trust"). The parties agree that benefits under the Pension Trust are governed by the Thirteenth Restatement of the Pension Plan Document ("Plan"). The relevant provisions of the Plan relate to how the Board determines who is eligible for benefits, the Board's timeline for making an initial decision on an application, and the applicant's rights if his or her application is denied.

Section 4.09 of the Plan provides a disability pension to certain participants who become totally and permanently disabled before reaching age sixty-five. To be eligible, there are multiple requirements, two of which are that the applicant "[h]as been awarded a Social Security Disability Benefit" and the applicant "[h]as filed a written application for benefits . . . together with a notice of award of disability benefits from the Social Security Administration . . . ." In this way, the Plan does not permit participants to independently establish disability.

The Board has interpreted the Plan to require it to decide claims within 180 days from the time the Pension Trust receives the application. For this rule, it cites section 10.01(c), which states:

> Approval or denial of the claim will normally be made within ninety (90) days after the claim has been received by the Plan. If additional time is required in special cases, the claimant will be notified in writing of the special circumstances requiring an extension of time and of the date by which the Plan expects to render the final decision, which will be not more than ninety (90) days from the end of the initial time

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

period. . . . If additional information is required, the claimant will be notified and requested to furnish the necessary data within the 180-day time period specified by this provision.

If the Board denies a claim, section 10.01(d) of the Plan requires the Board to notify the participant in writing. In addition to citing the specific reason for the denial along with references to the Plan, the notice is to provide "a description of the additional material or information necessary for the claimant to perfect his claim and an explanation of why such material or information is necessary." The notice must also include a statement about the right to sue under ERISA after the claimant exhausts the review procedures.

If a claim is denied, section 10.03(e) provides that the claimant may appeal and "request[] review of the denial" by the Board. During the appeal, Plan section 10.01(g)(1) specifies that a claimant is "entitled to submit" documents related to the claim; section 10.01(g)(4) provides the Board is to review those documents, "regardless of whether such information was submitted or considered in the initial benefit determination"; and section 10.01(g)(5) states the Board is to "decide the claim anew" without giving deference to the initial decision.

The relevant facts of this case are not in dispute. Ruessler became disabled and unable to work in 2015. He applied for Social Security Disability benefits the same year. Ruessler applied for disability pension benefits under the Plan in July 2017. His application followed on the heels of an amendment to the Plan. In early 2017, the Board adopted Amendment 4, which drastically reduced benefits under the disability pension for annuity start dates on or after October 1, 2017. The parties agree that, for purposes relevant to this case, an applicant's annuity start date is determined by when he applied for benefits. Based on Ruessler's July 2017 application date, Ruessler's projected annuity start date was September 2017— which would avoid the reduction of benefits for annuities that began on or after October 1.

When Ruessler submitted his application under the Plan, he did not include documentation from the Social Security Administration because he had not yet been awarded Social Security Disability benefits. While Ruessler's application for pension benefits was pending, the Board contacted him at least four times to notify him that he needed to provide the Board with a notice of award. In a letter dated September 12, 2017, the Board stated that if the notice of award was not received within 180 days from when the application was filed, the application would be denied and it would "be necessary . . . to complete a new Pension Application." The Board made similar statements in 2017 letters dated September 29, November 16, and December 15. The Board again communicated Ruessler's right to reapply if his application was denied in a letter dated December 20.

As indicated in the letters, after approximately 180 days from the July 2017 application date, the Board denied Ruessler's claim in January 2018. The Board's denial letter explained that Ruessler "[did] not qualify for a Disability Pension because [he] failed to provide a copy of [his] Social Security Disability Notice of Award." The letter cited section 4.09(a) of the Plan, which required that the applicant "ha[ve] been awarded a Social Security Disability Benefit" to be eligible for the Disability Pension.

Ruessler appealed the denial to the Board in either late February or early March 2018. In February, a Social Security Administrative Law Judge issued a written "Notice of Decision – Fully Favorable" on Ruessler's application for Social Security Disability benefits. By March 2, Ruessler submitted the "Notice of Decision" to be considered with his appeal of the Board's initial denial.

While the appeal was pending, there were several communications between the Board and Ruessler. First, the Board provided Ruessler an unsolicited pension application packet near the end of April 2018. A few days later, Ruessler contacted the Board by phone. The parties dispute whether one of Ruessler's purposes in making the call was to ask about the purpose of the unsolicited packet; however,

during the call Ruessler asked what his pension would be if he waited to apply until a later time, and he requested estimates for different retirement ages.

In June 2018, the Board denied Ruessler's appeal. The Board explained it denied the appeal because Ruessler "applied for a Disability Pension with a filing date of July 17, 2017 and failed to provide a copy of [his] Social Security Disability Notice of Award within the 180-day time period allowed of January 13, 2018." When the Board denied Ruessler's appeal, it cited: section 4.09(a), making eligibility under the Plan contingent on whether the claimant "[h]as been awarded a Social Security Disability Benefit"; section 4.09(d), stating the written application for benefits is required "together with a notice of award"; and section 10.01(c), requiring the initial benefit determination to be made within 180-days of when the claim is filed.

Ruessler filed his first lawsuit in September 2019. A couple weeks later, the Board's counsel emailed Ruessler's counsel. The Board's counsel had observed that Ruessler had not reapplied for a pension. The email stated that Ruessler could reapply for pension benefits and doing so would not prevent him from litigating the decision on his 2017 application. Ultimately, Ruessler dismissed the first case without prejudice, reapplied for benefits in 2020, and began receiving an early retirement pension, albeit one reduced under Amendment 4.

Ruessler then filed this lawsuit, alleging he has suffered damages as a result of the Board's denial of his July 2017 application for benefits. Ruessler brought two claims: (1) wrongful denial of benefits, *see* 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duties, *see* 29 U.S.C. § 1132(a)(3). Eventually the parties filed cross-motions for summary judgment. The district court denied Ruessler's motion and granted the Board's motion. Ruessler appeals.

## II. Analysis

### A. Standard of Review

Our review of a district court's grant of summary judgment is de novo, "viewing the evidence in the light most favorable to . . . the nonmoving party and drawing all reasonable inferences in [his or] her favor." *Roebuck v. USAble Life*, 992 F.3d 732, 735 (8th Cir. 2021). "We review the district court's adjudication of this [ERISA] claim de novo, applying the same standard of review to the [Board's] decision as the district court." *McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012).

The parties disagree about what standard the district court should have applied—and, therefore, what standard we should apply—to review the Board's decision. Ruessler argues the appropriate standard is a less deferential, "modified" abuse of discretion standard. The Board argues the traditional abuse of discretion standard governs. Our review of "the district court's determination of the appropriate standard of review under ERISA" is de novo. *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 958 (8th Cir. 2020).

The general rule is that challenges under § 1132(a)(1)(B) are reviewed de novo. *See id.* at 958. There is an exception to the general rule if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 958–59 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Under those circumstances, the decision is reviewed for an abuse of discretion. *See id.* at 959.

Ruessler admits the Plan gives the Board the necessary discretionary authority to trigger abuse of discretion review, but he argues there is an additional wrinkle in his case. In Ruessler's view, a "modified" abuse of discretion review is triggered if the Board has a conflict of interest—*i.e.*, if it decides who should receive benefits and makes the payments. Ruessler cites primarily two cases in support of this

argument: *McIntyre*, 972 F.3d 955, and *Woo v. Deluxe Corp.*, 144 F.3d 1157 (8th Cir. 1998).

*Woo* is the source of the standard for which Ruessler argues. In *Woo*, we stated a plaintiff could "obtain a less deferential review" if he or she "present[ed] material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [him or] her." 144 F.3d at 1160. Ruessler rests his argument for a less deferential review on the conflict-of-interest prong of *Woo*. Herein lies the problem.

The conflict-of-interest prong of *Woo* is no longer good law. That part of *Woo* was abrogated by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105 (2008). *See McIntyre*, 972 F.3d at 959 (acknowledging we have "repeatedly recognized" that *Glenn* "abrogated at least the conflict-of-interest component of *Woo*"). Now, under *Glenn*, any conflict of interest is just a factor to be weighed in the abuse of discretion analysis. *See Roebuck*, 992 F.3d at 737 (citing *Glenn*, 554 U.S. at 111–12); *Johnston v. Prudential Ins. Co. of Am.*, 916 F.3d 712, 714 (8th Cir. 2019). Therefore, we conclude the appropriate standard of review of the Board's decision is for an abuse of discretion, taking into consideration a conflict of interest as a factor in the analysis.

Now, we arrive at another sticking point. The parties disagree on whether the Board has the kind of conflict of interest that must be considered under *Glenn*. The Board focuses on its structure—a union-affiliated benefit fund, equally controlled by employer and employee representatives, and financed by employer contributions, not the trustees—and argues that consideration of an alleged conflict of interest is not required under these circumstances. The Board refers to these as Taft-Hartley funds. We have recognized that Taft-Hartley funds are those in "a trust fund set up pursuant to the terms of the Labor Management Relations Act of 1947" and meet the requirements of 29 U.S.C. § 186, *Lickteig v. Bus. Men's Assur. Co. of Am.*, 61 F.3d 579, 581 n.3 (8th Cir. 1995), including that "employees and employers are equally

represented in the administration of such fund," among other things. 29 U.S.C. § 186(c)(5)(B). Ruessler argues the Board has an inherent conflict of interest as both the decider and payer of benefits, *i.e.,* it has a conflict between the Board's duty to preserve the long-term financial health of the Plan and its duty to Ruessler individually. He maintains this conflict of interest is embodied in Amendment 4. Although he admits Amendment 4 was aimed at improving the long-term financial health of the Plan, he says it was adopted at the expense of individuals like Ruessler.

Our sister-circuits have approached this issue in different ways. *Compare Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 648 (9th Cir. 2009) (holding that a plan maintained under the Taft-Hartley Act did not have a conflict of interest because the plan did not meet the standard laid out in *Glenn*), *with Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138–39 (2d Cir. 2010) (concluding that funds maintained under the Taft-Hartley Act had a conflict of interest that needed to be weighed under *Glenn*). We find it unnecessary to resolve this issue for our circuit today. Even if we assume a conflict exists and give it an appropriate amount of weight, it does not change the outcome of this case.

## B. Denial of Benefits

Ruessler argues the Board abused its discretion by adopting an unreasonable interpretation of the Plan. The district court did not address whether the Board's interpretation was reasonable because the district court found Ruessler's arguments could not overcome the fact he never submitted a notice of award. Ruessler argues this is an impermissible post-hoc rationale under *King v. Hartford Life & Accident Insurance Co.*, 414 F.3d 994 (8th Cir. 2005) (en banc). Although we are skeptical of Ruessler's characterization of the district court's rationale, we recognize it is our practice, with limited exceptions, to review only the administrative record when considering a plan administrator's discretionary denial of a benefits application. *See Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016). We opt to address the Board's interpretation of the Plan directly, and ultimately affirm on alternative "grounds supported in the

-8-

record," rather than on the grounds relied on by the district court. *See Catipovic v. Peoples Cmty. Health Clinic, Inc.*, 401 F.3d 952, 957 (8th Cir. 2005).

The question we ask in this context is whether the Board's decision was "reasonable." *See Roehr v. Sun Life Assurance Co. of Can.*, 21 F.4th 519, 525 (8th Cir. 2021). "Under the abuse of discretion standard of review, 'we must uphold [a plan administrator's] decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence.'" *Ingram*, 812 F.3d at 634 (quoting *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014)).

The Board denied Ruessler's claim because Ruessler did not provide the notice of award within 180 days from his application date. Under its interpretation of the Plan, if an applicant fails to comply with the 180-day timeline, he or she must reapply to receive benefits. The new application would then establish a new Annuity Starting Date.[2] The Board based this interpretation on section 4.09(a), which makes eligibility for a disability pension contingent on having been awarded Social Security Disability benefits; section 4.09(d), which states the application must be submitted "together with a notice of award"; and section 10.01(c), which lays out the 180-day timeline for the initial benefit determination.

We use a factor-based analysis to assess whether a Plan interpretation is reasonable. *See King*, 414 F.3d at 999. The factors are:

---

[2]The concurring opinion expresses the view that it is speculative to conclude the Board has taken this position. We disagree. The statement of denial fairly encompasses this interpretation of the Plan because it put Ruessler on notice that his failure to comply with the 180-day time period was at least one of the fatal flaws in his application. *See Hall v. Metropolitan Life Ins. Co.*, 750 F.3d 995, 999 (8th Cir. 2014) (concluding rationale was not post-hoc when the denial letter "implicitly rejected" one of the appellant's arguments). And the Board has defended its denial of Ruessler's claim on these very grounds throughout each stage of the litigation.

whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Id.* (quoting *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)). These have come to be known as the "*Finley* factors." *See id.* The touchstone of the analysis remains whether the interpretation of the provision is "reasonable." *See id.*

Although Ruessler suggests the Board's interpretation implicates all five of the *Finley* factors, his argument hinges almost entirely on one factor: "whether their interpretation renders any language of the Plan meaningless or internally inconsistent . . . ." *Id.* (quoting *Finley*, 957 F.2d at 621). He points to section 10.01 of the Plan that governs appeals, including subsections (d), (g)(1), and (g)(4)–(5). Subsection (d) indicates the Board must state in the notice of denial "a description of the additional material or information necessary for the claimant to perfect his claim and an explanation of why such material or information is necessary . . . ." In addition, the appeal procedures provide that an appellant has the right to submit documents not previously considered, 10.01(g)(1); that the Trustees are to review those documents, 10.01(g)(4); and that the Trustees have a duty to "decide the claim anew," 10.01(g)(5).

In Ruessler's view, these provisions make it clear a Plan participant has the right to submit a notice of award during the appeal process and that doing so would cure the defect and preserve the annuity starting date associated with that application. And Ruessler maintains the Board's interpretation of the Plan "ignores this right" and "creates an inherent inconsistency." Therefore, he urges us to conclude the Board's interpretation of the Plan requiring the notice of award to be submitted within the 180-day timeframe is unreasonable.

We disagree with Ruessler's characterization of the appeal provisions as meaningless under the Board's interpretation of the Plan. Contrary to Ruessler's claims, the right to be given notice of how to "perfect his claim" on appeal does not necessarily mean notice of how to cure any defect. *See Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 661 (7th Cir. 1997) (holding the requirement that the written denial describe "additional material or information necessary for the claimant to perfect his claim" only applied when a plan administrator needed more information "to review the denial of a claim"). Subsection (g)(1), which gives the appellant the right to submit documents is not rendered meaningless because it still provides the appellant with the opportunity to submit documents showing he or she had provided the Board with the required document in the 180-day time period. Subsection (g)(4), requiring the Board to review submitted documents, is likewise not meaningless. The Board would review submitted documents that indicate whether the initial decision was correct. As for the Board's duty to "decide the claim anew" under subsection (g)(5), interpreting this as deciding the claim without deference to the initial decision, rather than as a do-over or an extended opportunity to submit the notice of award, does not render the provision meaningless. An applicant could still submit documentation showing timely submission of the required documents, and he could obtain a different result when the claim is decided "anew."

The remainder of the *Finley* factors do not help Ruessler. Ruessler argues the Plan's goal is to provide benefits to members who become disabled before the age of sixty-five. Even if we assume this is a Plan goal, the Board's interpretation is not inconsistent with the assumed goal because Ruessler was able to reapply and has been receiving an early retirement pension. Ruessler has not identified any specific substantive or procedural ERISA requirements that were violated, nor has he provided evidence the Board has interpreted this provision differently in other circumstances.

-11-

Lastly, assuming there is a conflict of interest that must be weighed as a factor under *Glenn*, the conflict does not tip the scales for Ruessler. The weight given to a conflict of interest is determined case-by-case. *Roebuck*, 992 F.3d at 737. Ruessler has not provided evidence to suggest the alleged conflict he emphasizes—the Board's duty to preserve the long-term financial health of the Plan and its duty to Ruessler—warrants special weight because it is the kind of tension all trustees who decide claims and pay benefits must balance. The mere existence of a conflict of interest does not alter "the dispositive principle . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 538 (8th Cir. 2020) (quoting *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir. 2010)). We see no compelling reason to disturb the Board's interpretation of the Plan as an abuse of discretion.

## C. Fiduciary Duty

Ruessler argues the Board breached its fiduciary duty to him by failing to provide him with certain information. ERISA contains the express requirement that fiduciaries "discharge [their] duties . . . with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ." 29 U.S.C. § 1104(a)(1)(B). That requirement is further supplemented by the common law of trusts, including the duty of prudence and the duty of loyalty. *See Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968, 976–77 (8th Cir. 2022).

Ruessler focuses his arguments on the duty of loyalty. This duty "includes the obligation to deal fairly with all plan members." *Id.* at 977 (quoting *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997)). One way a fiduciary can breach the duty of loyalty is by making an affirmative and materially misleading statement. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (stating, "it is a breach of this duty affirmatively to mislead a participant or beneficiary"); *Kalda v.*

*Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) (stating, "a fiduciary may not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan" (quotation omitted)).

There are no allegations in this case that the Board made inaccurate statements to Ruessler about his rights under the Plan. Instead, Ruessler argues the Board's statements in the January 2018 denial letter were inexcusably incomplete. Ruessler maintains that the Board's failure to specify he could reapply for benefits was a material misrepresentation because it "presented the appeal as the only path towards benefits." In Ruessler's view, the Board needed to also expressly state that he could reapply for benefits while his appeal was pending. And lastly, Ruessler argues the Board had a duty to inform him the Notice of Decision he submitted during the appeal was insufficient.

Ruessler is right that the duty of loyalty "impose[s] additional obligations of communication and disclosure under certain circumstances" beyond those expressly required by ERISA and its regulations. *Braden*, 588 F.3d at 598. And the duty also goes further than prohibiting affirmative misrepresentations. *See Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1025 (8th Cir. 2022). This duty may include "disclos[ing] any material information that could adversely affect a participant's interests," *Braden*, 588 F.3d at 598 (quoting *Kalda*, 481 F.3d at 644), and disclosing material information "when it knows that silence may be harmful" or the beneficiary "is laboring under a material misunderstanding of plan benefits." *Kalda*, 481 F.3d at 644. Still, "we are not quick to infer specific duties of disclosure under § 1104 because of the extent of the statutory and regulatory scheme." *Braden*, 588 F.3d at 598.

Even with these more expansive principles in mind, we discern no breach of the duty of loyalty here. Although the January 2018 denial letter did not specify that Ruessler could reapply, the Board had already told Ruessler he could reapply if his application was denied. In the September 12, 2017 letter, the Board stated that if the notice of award was not received, the application would be denied and it would "be

-13-

necessary . . . to complete a new Pension Application." Similar statements were made in four additional letters. The absence of the information in the denial letter is not enough to establish a violation of a fiduciary duty when such disclosure was not required by ERISA, and the Board had previously communicated Ruessler's right to reapply if his application was denied no less than five times. *Cf. Vercellino v. Optum Insight, Inc.*, 26 F.4th 464, 469 (8th Cir.), *cert. denied*, 142 S. Ct. 2819 (2022) (finding no violation of fiduciary duty when information the beneficiary said ought to have been disclosed was in the plan documents).

We conclude the Board did not breach its fiduciary duty when it did not notify Ruessler the Notice of Decision he submitted on appeal was insufficient. The initial letter the Board sent to Ruessler noting the absence of the document clearly stated Ruessler needed to submit a "Notice of Award." When the plain language of the Plan and the Board's other communications are consistent, there is no obvious unfairness to Ruessler if his claim is denied because he submitted the wrong document. *See id.* ("[T]he information Vercellino claims the Insurer should have disclosed . . . was laid out in the plan documents, and Vercellino does not point to any false or misleading statement made by the Insurer.").

As for Ruessler's contention that the Board had a duty to specify he could reapply for pension benefits while his appeal was pending, we are also unpersuaded. The Board had accurately communicated both Ruessler's right to reapply if his application was denied, as described above, and his right to appeal. There is no evidence the Board knew silence would harm Ruessler because in the May 2018 phone call, Ruessler himself asked about how waiting to receive the pension would affect the annuity amount and ultimately requested estimates for retirement at later ages. Moreover, Ruessler has not identified anything that should have caused the Board to know he misunderstood his rights. Under these circumstances, Ruessler fails to establish a violation of the duty of loyalty.

# III. Conclusion

For the reasons above, the judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring.

I concur in the court's opinion except as to section II.B, because I disagree with the court's understanding of the Board's interpretation of the Plan.

I agree that the Board denied Ruessler's claim because Ruessler did not "provide a copy of [his] Social Security Disability Notice of Award within the 180-day time period allowed." Ruessler argues that this rationale ignores subsection 10.01(g) of the Plan, which provided Ruessler the opportunity to submit additional documentation during the appeal process. According to Ruessler, he could have cured the defect in his application by submitting a notice of award as an additional document, which the Board would have had to consider "anew." And he contends that any interpretation of the Plan that would not have permitted him to cure his earlier failure to submit such a notice, would render subsection 10.01(g) "meaningless." This is Ruessler's primary argument for why the Board's interpretation of the Plan was not reasonable. See Finley, 957 F.2d at 621.

But Ruessler misstates the Board's interpretation of the Plan. Whether the Plan permitted Ruessler to submit a notice of award during the appeal process was not a question before the Board because Ruessler—undisputedly—did not submit a notice of award while his appeal was pending. See Hall, 750 F.3d at 997–99 (concluding insurance company's litigation position—that it reasonably denied benefits for failure to timely submit a change-of-beneficiary form—was not a "post hoc" rationale where applicant submitted the form during the appeal, and "[a]fter considering this information," the company issued a denial letter basing its benefits determination on a form already on file, thus "implicitly reject[ing]" the validity of the newly submitted form); cf. King, 414 F.3d at 1003 (rejecting plan administrator's

attempt to "offer[] a *post hoc* rationale during litigation to justify a decision reached on different grounds during the administrative process.")

Both counsel for the Board and the Board's designated representative under Federal Rule of Civil Procedure 30(b)(6), stated that it would be up to the Board to decide whether to consider an untimely notice of award. But here, the Board was not presented with one to consider. It would be speculative to conclude that the Board would have refused to consider a notice of award had Ruessler in fact submitted one or that the Board would have required Ruessler to reapply for benefits regardless of his untimely submission. The Board's interpretation of the Plan as stated in its decision denying Ruessler's claim for benefits does not render subsections (g)(1), (g)(4), or (g)(5) of section 10 of the Plan meaningless.

Ruessler does not meaningfully address how any of the remaining Finley factors support his position, and I agree with the court's conclusion that there are no grounds to disturb the Board's decision.

_____