# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2950

_____

Tina D. Beard

*Plaintiff - Appellant*

v.

Lincoln National Life Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: March 18, 2026
Filed: May 11, 2026

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

After Edward Beard passed away, his wife, Tina Beard, made a claim for accidental death and dismemberment (AD&D) benefits under his Employee Retirement Income Security Act (ERISA) plan, which was administered by Lincoln National Life Insurance Co. Lincoln Life denied her claim, explaining Mr. Beard's death was not covered because it had not occurred "solely as the result of an accidental injury" and that a plan exclusion applied since the blood thinner Mr.

Beard was using "contributed to" his death. Mrs. Beard then filed this lawsuit pursuant to ERISA, asking the district court[1] to reverse Lincoln Life's denial. Lincoln Life moved for judgment on the administrative record, and the district court granted its motion, finding its interpretation of the plan was reasonable and that it supported its decision denying Mrs. Beard's claim with substantial evidence. Mrs. Beard appeals, and we affirm.

## I. Background

Mr. Beard was suffering from stage IV pancreatic cancer in December 2022. As side effects of his cancer and chemotherapy, he experienced generalized weakness and chronic diarrhea and faced an elevated risk of blood clots. Mr. Beard used a blood thinner to mitigate the risk of blood clotting.

On December 16, 2022, Mr. Beard fell and hit his head while rushing to the bathroom. He went to the emergency room after he fell, and the doctors there conducted a CT scan. The results of the scan were normal, so the doctors discharged Mr. Beard, and he went home. Early the next morning, while Mr. and Mrs. Beard were sleeping, Mr. Beard became unresponsive and his breathing became irregular. Mrs. Beard called 911, and when paramedics arrived, they intubated Mr. Beard and took him back to the emergency room. Doctors conducted a second CT scan, and this time it showed Mr. Beard had developed a large subdural hematoma and that it had compressed his brain. Sadly, Mr. Beard died the following day.

Mr. Beard was enrolled in his employer's ERISA plan, which Lincoln Life administered, so Mrs. Beard submitted a claim for AD&D benefits. Her claim turns on three of the plan's terms. First, the plan expressly affords Lincoln Life "discretionary authority to construe [its] terms . . . and to determine benefit eligibility . . . ." Second, the plan states that AD&D "benefits are payable when a Covered

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Employee suffers a loss solely as the result of accidental Injury that occurs while covered," and it defines "Injury" as "bodily impairment resulting directly from an accident and independently of all other causes." And third, the plan excludes coverage "for any loss that is contributed to or caused by . . . disease, bodily or mental illness (or medical or surgical treatment thereof)."

Lincoln Life denied Mrs. Beard's claim, concluding in its final denial letter[2] "that Mr. Beard did not suffer a loss solely as the result of an accidental injury independently of all other causes," as was required to trigger coverage, and that coverage was excluded because "no benefits are payable for any loss that is contributed to or caused by: disease, bodily or mental illness (or medical or surgical treatment thereof)." In its letter, Lincoln Life reasoned that the blood thinner Mr. Beard was taking "to treat his . . . increased clotting risk associated with pancreatic cancer, contributed to the subdural hematoma; additionally, his generalized weakness, problems with gait and balance, urgency to reach the bathroom due to diarrhea secondary to his chemotherapy, contributed to the fall, and subsequent head injury." Lincoln Life also explained that it had had Dr. Robert Millstein and Dr. Keren McCarthy examine the medical evidence regarding Mr. Beard's death and that they both determined his blood thinner usage contributed to the subdural hematoma that caused his death.

Mrs. Beard then filed this case under ERISA, asking the district court to reverse Lincoln Life's denial of her claim. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) ("[ERISA] permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." (citing 29 U.S.C. § 1132(a)(1)(B))). After answering Mrs. Beard's complaint, Lincoln Life filed the administrative record and moved for judgment under Federal Rule of Civil

---

[2]We may only consider the bases Lincoln Life gave for its decision in its final denial letter. *See Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) ("Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision, and not the initial, often succinct denial letters, in order to ensure the development of a complete record." (cleaned up)).

Procedure 52(a)(1). The district court referred Lincoln Life's motion to a magistrate judge,[3] and she filed a report and recommendation (R&R) concluding Lincoln Life's motion should be granted. Mrs. Beard objected to the R&R, arguing there was no "evidence that Mr. Beard would not have died but for the blood thinner." But the district court overruled her objection, adopted the R&R, and entered judgment in Lincoln Life's favor. Mrs. Beard appeals.

## II. Analysis

When we review the district court's adjudication of an ERISA claim, we apply "the same standard of review to the plan administrator's decision as the district court." *Miller v. Hartford Life & Accident Ins. Co.*, 944 F.3d 1006, 1010 (8th Cir. 2019) (quoting *Johnston v. Prudential Ins. Co. of Am.*, 916 F.3d 712, 714 (8th Cir. 2019)). This means we review Lincoln Life's decision denying Mrs. Beard's claim for abuse of discretion, since the plan granted Lincoln Life discretion to construe its terms and to decide whether a claimant was eligible for benefits. *See Kutten v. Sun Life Assur. Co. of Can.*, 759 F.3d 942, 944 (8th Cir. 2014). Under this standard, "we must uphold a plan administrator's decision so long as it is based on a reasonable interpretation of the plan and is supported by substantial evidence." *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trs.*, 64 F.4th 951, 959 (8th Cir. 2023) (cleaned up).

Five factors inform whether a plan administrator's interpretation is reasonable: (1) whether its interpretation is consistent with the plan's goals; (2) whether its interpretation renders any of the plan's language meaningless or internally inconsistent; (3) whether its interpretation conflicts with ERISA's substantive or procedural requirements; (4) whether it has interpreted the words at issue consistently; and (5) whether its interpretation is contrary to the plan's clear language. *Id.* (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999

---

[3]The Honorable Helen C. Adams, United States Magistrate Judge for the Southern District of Iowa.

(8th Cir. 2005) (en banc)). And a plan administrator's decision denying a claim rests on substantial evidence as long as "a reasonable mind might accept" the evidence it cited "as adequate to support [its] conclusion." *King*, 414 F.3d at 999 (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 900 & n.10 (8th Cir. 1996)).

As noted above, when Lincoln Life denied Mrs. Beard's claim, it explained her claim was not covered under the plan and that an exclusion applied. We agree with Lincoln Life on both issues and discuss them in turn.

First, when someone makes a claim under an ERISA benefit plan, they have the burden to show their claim is covered. *See Fraley v. Benefit Tr. Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992) (noting an ERISA claimant had the "burden to show that he was entitled to the 'benefits . . . under the terms of his plan.'" (quoting § 1132(a)(1)(B))). In this case, to trigger the plan's AD&D coverage, an enrollee must suffer a loss "solely as the result of accidental Injury that occurs while covered." The plan defines "Injury" as "bodily impairment resulting directly from an accident and independently of all other causes." So Mrs. Beard needed to show the injury that caused Mr. Beard's death resulted directly from his fall — independently of all other causes — to establish coverage for her claim. She did not do so.

For instance, in its letter denying Mrs. Beard's claim, Lincoln Life explained that Dr. Millstein and Dr. McCarthy both concluded Mr. Beard's blood thinner usage contributed to his hematoma. Mrs. Beard did not come forward with any contrary evidence while her claim was before Lincoln Life, and she conceded throughout her appellate briefing that "the blood thinner probably did contribute to the hematoma"; "the blood thinner probably added blood to the hematoma"; "an anticoagulant could have contributed to the size of the hematoma, which no one disputes"; and "each doctor opined that the anti-coagulant made the hematoma bigger than it would have been . . . otherwise." Consequently, because Mrs. Beard did not show Mr. Beard's hematoma was caused by his fall, independently of all other causes, her claim was not covered.

Second, when the administrator of an ERISA plan denies a claim based on an exclusion, it "has the burden of proving that the exclusion applies." *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1117 (8th Cir. 2023) (quoting *Nichols v. UniCare Life & Health Ins. Co.*, 739 F.3d 1176, 1184 (8th Cir. 2014)). The exclusion Lincoln Life invoked when it denied Mrs. Beard's claim states, "No benefits are payable for any loss that is contributed to or caused by . . . disease, bodily or mental illness (or medical or surgical treatment thereof)." Mrs. Beard states in her brief that she "has no objection" to Lincoln Life interpreting "contribute" as "to give or furnish along with others towards bringing about a result." So the only thing left for us to decide is whether Lincoln Life supported its conclusion that Mr. Beard's blood thinner usage contributed to his death with substantial evidence. It did.

Specifically, Lincoln Life relied on Dr. Millstein's and Dr. McCarthy's reports throughout its final denial letter, and both doctors expressly concluded Mr. Beard's blood thinner usage contributed to his death. In his report, Dr. Millstein stated that while subdural hematomas are "uncommon," they "mainly occur[]" in people who use blood thinners "because blood clots less easily and any bleeding . . . is likely to be more severe." He further explained that when someone using a blood thinner develops a subdural hematoma, the outcome is likely to be worse, the risk of death doubles, and the hematoma is more likely to expand. In fact, Dr. Millstein noted that "[f]atal subdural hematoma has been found to be more strongly associated with anticoagulant use th[a]n non-fatal subdural hematoma," meaning that if a person develops a subdural hematoma while using a blood thinner, they will more than likely die. And, as Dr. Millstein explained, "[a] significant percentage of these deaths result from . . . pressure on the brain that develops in the days after injury," as the hematoma expands and compresses the brain. Dr. McCarthy reached the same conclusion as Dr. Millstein, after thoroughly analyzing Mr. Beard's medical history.

Based on Dr. Millstein's and Dr. McCarthy's reports, Mr. Beard was more likely to develop the hematoma, and it was almost certainly larger and more lethal, because he was using a blood thinner. Considering this evidence against the parties'

definition of "contributed," "a reasonable mind might accept" Dr. Millstein's and Dr. McCarthy's opinions "as adequate to support [Lincoln Life's] conclusion" that Mr. Beard's blood thinner usage gave or furnished along with his fall toward bringing about his death.[4] *King*, 414 F.3d at 999 (quoting *Donaho*, 74 F.3d at 900 & n.10). Thus, Lincoln Life supported its application of the exclusion with substantial evidence.

Mrs. Beard argues, to the contrary, that Lincoln Life's evidence only showed Mr. Beard's blood thinner usage contributed to his hematoma, not his death. As she puts it, "the only way that the blood thinner could have contributed to [Mr. Beard]'s death is if [Mr. Beard] would not have died had he not been on the blood thinner." This argument misses the mark for two reasons.

First, if the plan did not give Lincoln Life discretion to construe its terms, we would have to give the phrase contributed to its "literal and natural meaning." *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007) (cleaned up). Mrs. Beard, instead, invites us to conflate contributed to with something like effective cause. *See Kend v. Chroma-Glo, Inc.*, 478 F.2d 198, 202 (8th Cir. 1973) ("Effective cause, as used in ordinary or popular language portrays a certain exclusiveness in that there cannot be two effective causes . . . ."). Second, the plan *does* give Lincoln Life discretion to construe its terms. As a result, we can only review for abuse of discretion and "must defer to [Lincoln Life]'s interpretation of the plan so long as it is 'reasonable,' even if [we] would interpret the language differently as an original matter." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir. 2010) (quoting *King*, 414 F.3d at 998–99). Mrs. Beard concedes Lincoln Life's interpretation is reasonable. We are therefore bound to apply that definition, as we did above.

---

[4]We express no view on whether any of Mr. Beard's other infirmities would have triggered the exclusion.

## III. Conclusion

For these reasons, we affirm the district court's judgment.

_____